**UNITED STATES**

v.

**Sergeant John A. THOMPSON, FR 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, United States Air Force.**

**ACM 26797.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 10 Feb. 1988.

Decided 4 Aug. 1989.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi, Colonel Richard F. O'Hair, Major Deborah A. Baker, and Captain William E. Boyle.

Appellate Counsel for the United States: Colonel Joe R. Lamport; Lieutenant Colonel Robert E. Giovagnoni; Lieutenant Colonel Morris A. Tanner, Jr.; and Major Terry M. Petrie.

Before HODGSON, HOLTE, FORAY, MICHALSKI, LEWIS, BLOMMERS, KASTL, MURDOCK and PRATT, Appellate Military Judges, En Banc.

### DECISION

MURDOCK, Judge:

The appellant was tried by a military judge sitting alone as a general court-martial. Contrary to his pleas, he was found guilty of three specifications of sodomy with a child under 16 years old, and one specification of assault. The sodomy specifications were based on misconduct with his two stepsons, and the assault was based on misconduct against his wife. He was sentenced to a dishonorable discharge,

confinement for 30 years, total forfeitures, and reduction to airman basic.

We will discuss the appellant's two asserted errors in reverse order. He asserts he was denied a speedy trial. We adopt the trial judge's findings on this issue and hold that he was not denied a speedy trial. R.C.M. 707(c)(1)(A) and 707(c)(3); *United States v. Palumbo*, 24 M.J. 512 (A.F.C.M.R.1987); *United States v. Jones*, 21 M.J. 819 (N.M.C.M.R.1985).

In his other assertion of error, the appellant has objected, both at trial and on appeal, to the method used to protect the young victims from having to face him during their testimony. He asserts that he was denied his right to confront witnesses because the children were permitted to testify with their backs toward him. We find no error in the procedure.

During the pendency of this appeal, the United States Supreme Court decided *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), which reversed an Iowa decision allowing children to testify from behind a darkened screen.

Our legal system has traditionally had different procedures for child witnesses. For example, traditional common law rules of witness competency limited the extent to which courts could rely on child testimony. However, these rules have undergone a "process of piecemeal revision by statutes for over a century, so that today most of the former grounds for excluding a witness altogether have been converted into mere grounds for [impeachment]". *McCormick's Handbook of the Law of Evidence*, 2d Ed, Sec. 61. (1972). Other procedures have attempted to reduce the negative impact of court proceedings on sensitive child witnesses. For example, a number of jurisdictions allow use of video tape or television systems to capture the testimony while allowing the child to avoid sitting in the courtroom. *See Coy*, at 108 S.Ct. 2804 (O'Conner, J., concurring).

The growing importance of child testimony has forced the courts and legislatures to rethink some of the traditional approaches to child testimony. Prosecution of child abuse relies heavily on child testimony.

Reported instances of this sad offense are increasing and there is often little evidence beyond the injuries and the child's testimony. Many states have mechanisms for protecting child victims and child witnesses from the full rigor of a courtroom trial. *See Coy*, at 108 S.Ct. 2804 (O'Conner, J., concurring). These mechanisms include allowing videotaping children's testimony for use at trial later, using hearsay exceptions to admit statements from absent children, authorizing closure of the courtroom, and using closed-circuit television. *See, Note, To Keep the Balance True: The Case of Coy v. Iowa*, 40 The Hastings Law Review 437 (1989) (discussion of state action in this area).

The present case represents one attempt to respect the special concerns of dealing with child witnesses while providing a criminal accused with all required protections. The two child witnesses in this case were the appellant's stepsons. They were 12 and 10 years old at the time of trial. Before the boys were called to testify, the defense counsel notified the judge that he was concerned about the prosecution's plan to rearrange the courtroom so that the appellant could not see the witness' faces. The trial counsel confirmed that he intended to request the unusual courtroom arrangement. When the changes were finally approved and completed, the witnesses sat facing the judge with their backs to the appellant. The defense counsel was allowed to sit near the judge's area so he could see the witness' faces.

Before approving it, the military judge conducted an extended discussion with both counsel about this seating plan. As we mentioned earlier, at the time of this trial, the United States Supreme Court had not yet issued their decision in *Coy*. Previously, the Iowa Supreme Court had upheld Coy's conviction for engaging in lascivious acts with a child. The two teenage female victims in *Coy* had testified from behind a glass partition which blocked their vision of the defendant while allowing him to view them dimly. *State v. Coy*, 397 N.W.2d 730 (1986). Unlike the present case, *Coy* involved a recently enacted statute which

allowed a screen to be erected without a judicial determination of the need for such protection.

In the United States Supreme Court opinion, Justice Scalia, writing for the Court, held that the Confrontation Clause of the Sixth Amendment "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." The Court stated that "[i]t is difficult to imagine a more obvious or damaging violation of the defendant's right to a face-to-face encounter [than the use of the screen in Coy's case]". *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 2802, 101 L.Ed.2d 857 (1989).

The Court left undecided whether there were any exceptions to the requirement for a literal face-to-face confrontation. The Court stated:

ur cases suggest, however that even as to exceptions from the normal implications of the Confrontation Clause, as opposed to its most literal application, something more than the type of generalized finding underlying such a statute is needed when the exception is not 'firmly ... rooted in our jurisprudence.' [citations omitted]. The exception created by the Iowa statute, which was passed in 1985, could hardly be viewed as firmly rooted. *Since there have been no individualized findings that these particular witnesses needed special protection,* the judgment here could not be sustained by any conceivable exception.

108 S.Ct. at 2803 (emphasis added).

The present case differs from *Coy* in two key respects. First, there is no statute or regulation mandating a particular courtroom arrangement for child witnesses or child victims. Second, the military trial judge made an extensive inquiry into the need for special protections before he approved the plans for allowing the children to testify with their backs to the appellant.

We will turn to the absence of statute or regulation first. A trial judge's actions in directing arrangements of the courtroom are, in general, well within his discretion as presiding officer of the court-martial. R.C.M. 801(a) and (c); *See United*

*States v. Hershey*, 20 M.J. 433 (C.M.A.1985) (closure of courtroom in some cases); *United States v. Johnson*, 15 M.J. 518 (A.C.M.R.1983) (moral supporter allowed to sit near child witness). We hold that the trial judge did not abuse his discretion by authorizing an unusual seating arrangement.

That leaves the more difficult question of whether the inquiry made by the trial judge was sufficient to justify allowing the witnesses to testify without actually confronting the appellant face-to-face. Justice O'Conner, joined by Justice White, wrote a concurring opinion in *Coy* which we find helpful. She stated that an appellant's rights under the Confrontation Clause were "not absolute but rather may give way in an appropriate case to other competing interests so as to permit the use of certain procedural devices designed to shield a child witness from the trauma of courtroom testimony." 108 S.Ct. at 2803. She continued:

In short, our precedents recognize a right to face-to-face confrontation at trial, but have never viewed that right as absolute. I see no reason to do so now and would recognize exceptions here as we have elsewhere.

Thus, I would permit use of a particular trial procedure that called for something other than face-to-face confrontation if that procedure was necessary to further an important public policy. [citations omitted]. The protection of child witnesses is, in my view and in the view of a substantial majority of the States, just such a policy. The primary focus therefore likely will be on the necessity prong. I agree with the Court that more than the type of generalized legislative finding of necessity present here is required. *But if a court makes a case-specific finding of necessity, as is required by a number of state statutes, [citations omitted] our cases suggest that the strictures of the Confrontation Clause may give way to the compelling state interest of protecting child witnesses.* Because nothing in the Court's

opinion conflicts with this approach and this conclusion, I join it.

108 S.Ct. at 2805 (emphasis added).

We agree. In the present case, the trial judge made specific inquiry and findings about the need to protect child witnesses from facing the appellant directly.

During the inquiry, the trial counsel called a psychologist to testify about her knowledge of the witnesses and the impact face-to-face testimony might have on them. She testified that she had counselled with the children every two weeks for about eight months before the trial. She stated that the boys had "a great deal of anxiety and fear about participation in [the] proceedings" and had

spontaneously talked with me last week about their fear of being in the courtroom with Mr. Thompson, and talked about a fear that they might even be attacked by him in the courtroom. The boys enter these proceedings having stated a great deal of anxiety and shame and fear about participation. Attempts have been made to help them to modulate that fear and to provide them with feelings of greater safety in being in this room and participating in the proceedings. However, both of the children will have difficulty in talking about their experience that they have identified in terms of being in a more public setting and being in front of strangers and for them to be in direct line of vision with defendant in this case, I think, would tend to block their ability to respond and to think about the questions. There's a great deal of anxiety and it's easy to be distracted by what is in your line of vision rather than to be able to respond to the questions that are asked. I think that their being in the direct line of vision with the defendant will impair their ability to talk about their experiences and to actively think about the questions that they're responding to.

When the trial counsel asked the psychologist about turning the witness chair so the children's backs would be to the appellant, she responded:

I think that that would lessen their anxiety and would be less likely to produce blocks in their intellectual capacity to respond to questions if they do not have Mr. Thompson in their direct line of vision.

On cross-examination, the psychologist stated that she did not think the boys would "adamantly refuse to participate in the proceedings". Trial counsel then asked whether their anxiety level would be so high as to "block" their "articulation of anything that happened" if they were to testify face-to-face. She replied:

Yes, Michael in particular has a stuttering problem that increases when he is anxious and anxiety is such an overwhelmingly strong emotion that it blocks intellectual function, so that if you raise the anxiety level of someone, it's normal for intellectual, the ability to intellectually think about something, to be shut off. And I think that their ability to respond to questions with their full recollection would be impaired by that situation.

She added that her opinion was not based solely on the nature of the crimes alleged, but also on the boys' relationship with the accused. She concluded by admitting that "in general" she would prefer any of her child clients to be allowed to testify without having to face the accused.

After considering the testimony and arguments on the motion, the trial judge issued his findings. We find them to be fair. He found:

The defense has objected to the prosecution's proposal that [the children] testify not from the witness stand but while seated in a chair facing the witness stand and the military judge. This position is indicated by the letter "C:" on Defense Exhibit C [should be Defense Exhibit W]. Trial counsel has presented evidence through Linda Ann Sweeney Frawley [the psychologist] that the children if required to testify from the witness stand where they would be looking directly at the accused would have their ability to think and testify accurately impaired and that they could respond better if the accused were not in their direct line of

sight, and I find by a preponderance of the evidence that that's a fact.

I further find that:

One, such a [sic] arrangement will not have any effect on the Court with regard to the presumption of innocence of the accused;

Two, that the arrangement proposed by trial counsel is in no way obtrusive and certainly not comparable with the arrangements in *Coy v. Iowa* cited by defense counsel;

Three, the accused and witnesses will be in the same room with no barrier between them and the fact that the witnesses will not be facing the accused will not deprive the accused of his right to confrontation;

Four, considering the testimony concerning the trauma to the children if forced to testify facing the accused, and balancing that factor against the accused's alleged right to have witnesses facing him, I find the procedure proposed by the trial counsel will not prejudice the rights of the accused and will insure the witnesses testify freely.

The objection is therefore overruled.

The military judge's inquiry was adequate to satisfy *Coy* and to justify the particular steps taken to accommodate the fears of the child witnesses in this case. We are not indicating our advance approval of every situation in which witnesses testify with their backs to the accused, even where there is an inquiry into the necessity for such a procedure. *Coy* holds that the general rule is to the contrary. When exceptions are found, the military judge will, undoubtedly, have conducted a careful inquiry into the reasons for the proposed seating arrangement. That inquiry will have satisfied the judge that there are compelling reasons for changing the traditional witness seating arrangement. A thorough inquiry would probably include an *in camera* interview by the judge with the witnesses who might need the special arrangement. This procedure would allow the judge to evaluate the testimony of any experts who have testified about the need for protections.

In the present case, the information presented to the judge indicated that the witnesses were young and frightened of testifying. The psychologist testified that their fright was not just a generalized stage fright, but was also a fear of being physically attacked by the appellant. Many witnesses may harbor a fear of being attacked for their adverse testimony, but these children had already been repeatedly beaten by the appellant during his commission of the offenses for which he was being tried. Their fear was based on their actual knowledge of the physical harm he was capable of inflicting. The psychologist also testified that both boys, and particularly the younger one, were likely to be so confounded by facing the appellant directly that their mental capabilities might be blocked, rendering them incapable of testifying.

We are also concerned that in such a stressful situation child witnesses might eventually lie in order to end the session and relieve the stress. *See Coy* at 108 S.Ct. 2809 (Blackmun, J., dissenting). This might happen with any witness, but particularly with a child witness where the accused is a parent or one standing *in loco parentis*. The North Carolina Supreme Court expressed our concerns well:

> Sexual activity between a parent and a minor child is not comparable to sexual activity between two adults with a history of consensual intercourse. The youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose.

*State v. Etheridge,* 319 N.C. 34, 352 S.E.2d 673, 681 (1987). We quoted *Etheridge* and expressed similar concerns in *United States v. Torres,* 27 M.J. 867 (A.F.C.M.R. 1989).

There is a good possibility that screening a child from a related accused, or one standing *in loco parentis,* might facilitate obtaining truthful testimony rather than encourage falsity. If confronting the ac-

cused is designed to encourage truthful testimony, surely a child testifying about a related accused, or one standing *in loco parentis*, will feel the presence of the accused when they are in the courtroom together, even when they are not facing them directly. When this presence is coupled with the opportunity for the fact-finder and the defense counsel to observe the child's demeanor directly, and the opportunity for the accused to observe all but the facial expressions of the witness, we believe the accused's rights have been properly protected.

The United States Court of Military Appeals mentioned *Coy* in a recent case involving the admissibility of an out of court statement. *United States v. Hubbard*, 28 M.J. 27 (C.M.A.1989). In our view, the present case is distinguishable. *Hubbard* did not involve either child witnesses or a procedure for screening the witnesses. The discussion of *Coy* in *Hubbard* was primarily in the context of whether admitting an out of court statement violated Hubbard's right to confrontation and does not appear to have been intended to announce a rule for use in all cases.

We hold that under the circumstances of this case, the military judge was correct in allowing the children to testify in the presence of, but not facing, the appellant. After examining the record of trial, the assignment of errors, and the government's reply thereto we have concluded that the findings and sentence are correct in law and fact and that no error prejudicial to the substantial rights of the accused was committed. Accordingly, the findings of guilty and sentence are

AFFIRMED.

Chief Judge HODGSON, Senior Judges FORAY and KASTL, and Judges HOLTE, BLOMMERS, and PRATT concur.

Judge MICHALSKI participated in oral argument but not in the decision in this case, Judge HOLTE participated in both oral argument and the decision.

Senior Judge LEWIS (dissenting):

I conclude that the military judge erred in allowing the two victims to testify with their backs to the appellant. Under the circumstances of this case, I am not satisfied beyond a reasonable doubt that the error was harmless. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–711 (1967). *See United States v. Brooks*, 25 M.J. 175, 180 (C.M.A. 1987). I would set aside the findings of guilty of Charge I and the Specifications thereunder (alleging acts of sodomy committed against the appellant's stepsons) and the sentence and authorize a rehearing. I would not preclude the prosecution from resubmitting a motion to shield the child witnesses from eye-to-eye contact with the appellant so that the evidence presented in support thereof might be evaluated in light of the Supreme Court's guidance in *Coy v. Iowa*.

## Another View of Coy v. Iowa: What did the Plurality Hold?

The majority have premised the decision today on their best estimate of what some future majority of the Supreme Court might recognize as the proper balance between the emotional interests of child sexual abuse victims at trial and the Sixth Amendment right of criminal accuseds to confront their accusers. Support for recognition that these competing interests may be balanced can be found in a concurring opinion of two of the eight Justices who participated in *Coy*. I believe it is appropriate that one of us examine *Coy* from the perspective of the plurality opinion authored by Justice Scalia with the concurrence of three others. The message of the plurality in *Coy* is that the balance has already been struck, and decisively so, in favor of an accused's right to a face-to-face confrontation with prosecution witnesses. It is commendable that we champion concerns for the child victims who are subject to the trauma of the trial process. However, if we elevate these concerns to a position of superiority to an accused's Sixth Amendment rights, we are fashioning a

very tenuous construction of constitutional law.

Whether or not we find it palatable to acknowledge it, the plurality in *Coy* accepted as a necessary consequence the probability that certain truthful witnesses will experience anxiety and trauma when required to testify under the direct gaze of those whom they accuse. Justice Scalia observed: "That face-to-face presence may, unfortunately, upset the truthful rape victim or abused child, but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult. It is a truism that constitutional protections have costs." 108 S.Ct. at 2802. It is inconceivable that this position was reached precipitously and without any thought of the special place that child witnesses have come to occupy in our criminal trial processes. The bottom line of *Coy* is that this consideration does not enjoy any special recognition when it conflicts with an accused's ability to face his accusers at trial. Whether, in the context of confrontation, the special needs of child witnesses enjoy any measurable degree of recognition at all with a discernible majority of the Supreme Court remains to be seen.

### The "Future" Majority

Let us assume that Justice O'Connor, in her concurring opinion, speaks for the future majority of the Supreme Court on this issue. How will a case like that before us be viewed? We, of course, embark upon a rather speculative venture at this point. I submit that speculation to the effect that the balance will be struck in favor of the child witness is highly illusory.

As I see it, the majority opinion has stressed two factors which distinguish the case before us from that before the Justices in *Coy*. 1. We are not faced with a statute, regulation or rule which permits certain prosecution witnesses to be shielded from eye-to-eye contact with an accused without a determination of necessity by the military judge. 2. The military judge in this case made findings of fact and concluded that allowing the two child witnesses to testify with their backs to the appellant, so

as to avoid direct eye contact, was necessary. If this approach were to be found sufficient *per se* to overcome an accused's right to confrontation, such disposition would signal a radical retreat from the essence of *Coy*. When the military judge's findings are examined critically they say little more than that the child witnesses would experience less anxiety and, thus, could testify more readily if they were to avoid direct eye contact with the appellant. That, in my view, is not sufficient.

I do not write to demean the findings that the military judge made in this case. With the judicial guidance available at the time of trial I can easily envision that I would have made similar findings in support of the same ruling. However, we are now looking at a constitutional principle that has been significantly refocused. We cannot evaluate that which occurred at trial in light of what the law appeared to be at that time; we must apply the law as it is now. When the majority affirm the military judge's action in this case they announce that the "exception" to *Coy* has virtually engulfed the constitutional rule stated therein insofar as Air Force practice is concerned. The irony is that *Coy*, as so viewed, becomes a vehicle for protecting the emotional interests of child victims at trial. This is a very worthy goal. However, it is worth repeating that its enunciation by this Court makes for very bad constitutional law.

The majority opinion, in attempting to develop the outlines of an exception to the result in *Coy*, discusses three factors that are worthy of consideration. One of the victims in this case suffered from a stuttering problem which was likely to manifest itself under anxiety and stress. This condition, as described by the expert witness, might well interfere with the child's capacity to think properly and, thus, could impair his ability to provide meaningful testimony. It is also noteworthy that the appellant, unlike the defendant in *Coy*, occupied a position *in loco parentis* to the victims and had exercised considerable control and influence over them. The victims might be expected to be greatly intimidated by being in direct eye contact with him when they

testified. The majority opinion also mentions that the witnesses were repeatedly beaten by the appellant during the commission of the offenses. The psychologist who testified in support of the prosecution motion did not allude to physical violence visited upon the child victims in her testimony, but the military judge had access to exhibits which contained references to certain beatings. We do not know the extent to which any of these factors influenced the military judge's ruling because his findings do not so indicate. In the absence of more particularized findings of necessity by the military judge, I am not willing to say that the ruling in this case can be sustained as an exception to the appellant's right of confrontation. See Justice O'Connor's concurring opinion in *Coy*, 108 S.Ct. at 2805.

I believe that it is also necessary that we critically examine the testimony of the psychologist. It appears likely that her recommendation for shielding the child witnesses from the direct gaze of the appellant was not greatly influenced by the specific factors set forth above. As the majority opinion notes, she acknowledged on cross-examination her general preference that her child clients be permitted to testify without having to confront their accused assailants. Her opinion was based in part on the view that children as a class experience extreme anxieties when they have to provide testimony in sexual abuse cases. This is undoubtedly a valid point of view and one that is hardly surprising coming from an individual involved in therapeutic treatment of abused children. It would be surprising, indeed, if a child psychologist were to express a contrary view concerning a patient in therapy. However, a premise this broad makes for a broad rule. Is the Court today holding that an accused's right to confrontation in a given case is determined by what is emotionally feasible and sound for the welfare of child witnesses undergoing therapy? That is truly a broad rule.

Military judges faced with a proposition such as I have posited above are administering something other than justice. I submit that we invite them to administer a discipline for which they are neither equipped nor trained. Or, to put the shoe on the other foot, is it the therapists who will ultimately be charged with the administration of an important aspect of due process in Air Force courts-martial?

### A Caveat: What of Trials with Members?

In my view, the most essential finding made by the military judge was the following: "One, such a [sic] arrangement will not have any effect on the Court with regard to the presumption of innocence of the accused; ..." What might the military judge have found in this regard if this had been a trial before members rather than the military judge, sitting alone? I fear that an arrangement to shield or move witnesses to a position where they might avoid direct eye-to-eye contact with an accused will be difficult to handle without significant risk of prejudice in a trial before members. Any method that is employed is surely going to be obvious to the members. Does such an arrangement convey an unmistakable message that someone in a position of authority, presumably the military judge, has determined that the accused has caused grievous physical or psychological harm or that he otherwise represents a danger to the child witness or witnesses who appear to testify? These may be legitimate aggravation considerations, but at an appropriate point in the trial once the issue of guilt has been properly determined. Might the potential for prejudice arising from such a situation be alleviated by appropriate instructions? I assume that we may have occasion to address that issue in due course.