UNITED STATES, Appellee,

v.

**John A. THOMPSON, Sergeant, U.S. Air Force, Appellant.**

No. 63,283.
ACM 26797.

U.S. Court of Military Appeals.

Argued March 5, 1990.

Decided Sept. 25, 1990.

For Appellant: *Major Ronald G. Morgan* (argued); *Colonel Richard F. O'Hair* (on brief).

For Appellee: *Major Terry M. Petrie* (argued); *Colonel Robert E. Giovagnoni, Major Paul H. Blackwell, Jr., Captain David G. Nix* (on brief); *Colonel Joe R. Lamport.*

*Opinion of the Court*

COX, Judge:

This case calls upon us to decide:

WHETHER APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO CONFRONT THE WITNESSES AGAINST HIM WHEN THE CHILD WITNESSES WERE PERMITTED, AT TRIAL, TO TESTIFY AGAINST APPELLANT WITH THEIR BACKS TO HIM.

Appellant, a sergeant in the United States Air Force, was convicted of sexually abusing his two stepsons.[1] Specifically, he sodomized the two boys, M and F, ages 7 and 10 respectively, by frequent anal intercourse and by requiring the boys to commit

---

**1.** Appellant was tried by general court-martial before a military judge alone. Contrary to his pleas, he was found guilty of sodomy with a child under the age of 16 and assault on a child under the age of 16, in violation of Articles 125 and 128, Uniform Code of Military Justice, 10 USC §§ 925 and 928, respectively. His sentence to confinement for 30 years, total forfeitures, reduction to pay grade E–1, and a dishonorable discharge was approved by the convening authority. The Court of Military Review affirmed the findings and sentence. 29 MJ 541 (1989) (en banc).

fellatio, on numerous occasions from September 1984 until September 1985. He was also found guilty of sodomizing M in late November 1985. As a result of the sexual abuse, each child suffered permanent rectal injury.[2] At the time of trial, some 2–and–1/2 years after the episodes, the children were being treated by a psychologist for psychological and emotional trauma resulting from the incidents.

Before the court-martial began, trial counsel proposed having the boys testify, not from the witness stand next to the military judge, where they would face appellant, but instead from a chair in the center of the courtroom, with their backs to appellant. The chair was positioned such that the boys could see and be seen by the military judge, trial counsel, and defense counsel. However, they could not see or be seen by appellant face-to-face. Defense counsel objected to this procedure on the ground that the arrangement violated appellant's Sixth Amendment right to confront his accusers.

In aid of his proposal, trial counsel offered the testimony of Ms. Linda Sweeney–Frawley, a psychologist. After Ms. Sweeney–Frawley was accepted as an expert witness in the area of child sexual abuse, the following colloquy took place between her and trial counsel:

Q. Do you have an opinion as to how ... [the boys] should come in here? Let me rephrase that. In terms of the set up of this courtroom, do you have an opinion as to whether or not they would be able to sit where you're sitting and tell what allegedly happened to them?

A: I think that that would present a problem for the children who have a great deal of anxiety and fear about participation in this proceeding. *And they spontaneously talked with me last week about their fear of being in the courtroom with Mr. Thompson, and talked about a fear that they might even be attacked by him in the*

*courtroom. The boys enter these proceedings having stated a great deal of anxiety and shame and fear about participation. Attempts have been made to help them to modulate that fear and to provide them with feelings of greater safety in being in this room and participating in the proceedings. However, both of the children will have difficulty in talking about their experience that they have identified in terms of being in a more public setting and being in front of strangers and for them to be in direct line of vision with defendant in this case, (continuing) I think, would tend to block their ability to respond and to think about the questions.* There's a great deal of anxiety and it's easy to be distracted by what is in your line of vision rather than to be able to respond to the questions that are asked. *I think that their being in the direct line of vision with the defendant will impair their ability to talk about their experiences and to actively think about the questions that they're responding to.*

Q. *What is your opinion about repositioning the witness stand so that perhaps they might be facing the Judge and their back turned toward the accused?*

A. *I think that that would lessen their anxiety and would be less likely to produce blocks in their intellectual capacity to respond to questions if they do not have Mr. Thompson in their direct line of vision.*

(Emphasis added.)

Based upon the witness' testimony, the military judge made the following findings and ruling:

MJ: The defense has objected to the prosecution's proposal that ... [the victims] testify not from the witness stand but while seated in a chair facing the witness stand and the military judge....

*Trial counsel has presented evidence through Linda Ann Sweeney–Fraw-*

2. Appellant was also convicted of assault and battery on his wife on divers occasions during this same time period.

*ley that the children if required to testify from the witness stand where they would be looking directly at the accused would have their ability to think and testify accurately impaired and that they could respond better if the accused were not in their direct line of sight, and I find by a preponderance of the evidence that that's a fact.*

I further find that:

One, such a[n] arrangement will not have any effect on the Court with regard to the presumption of innocence of the accused;

Two, that the arrangement proposed by trial counsel is in no way obtrusive and certainly not comparable with the arrangements in *Coy v. Iowa* cited by defense counsel; [³]

Three, the accused and witnesses will be in the same room with no barrier between them and the fact that the witnesses will not be facing the accused will not deprive the accused of his right to confrontation;

Four, *considering the testimony concerning the trauma to the children if forced to testify facing the accused, and balancing that factor against the accused's alleged right to have witnesses facing him, I find the procedure proposed by the trial counsel will not prejudice the rights of the accused and will insure the witnesses testify freely.*

The objection is therefore overruled.

(Emphasis added.)

The case was appealed to the Court of Military Review pursuant to Article 66(c), Uniform Code of Military Justice, 10 USC § 866(c), which empowers that court to make factual findings. The en banc court found:

In the present case, the information presented to the judge indicated that the

witnesses were young and frightened of testifying. The psychologist testified that their fright was not just a generalized stage fright, but was also a fear of being physically attacked by the appellant. Many witnesses may harbor a fear of being attacked for their adverse testimony, but these children had already been repeatedly beaten by the appellant during his commission of the offenses for which he was being tried. Their fear was based on their actual knowledge of the physical harm he was capable of inflicting. The psychologist also testified that both boys, and particularly the younger one, were likely to be so confounded by facing the appellant directly that their mental capabilities might be blocked, rendering them incapable of testifying.

29 MJ 541, 545 (1989).

The Court of Military Review then determined that an accused's right "to be confronted with the witnesses against him," U.S. Const., amend. VI, may give way if it is necessary to protect a child witness. Ultimately that court found:

The military judge's inquiry was adequate to satisfy *Coy* and to justify the particular steps taken to accommodate the fears of the child witnesses in this case....

*Id.* at 545.

We are called upon to decide whether, under these circumstances, appellant was denied his right "to be confronted with the witnesses against him," endowed upon us all by the Constitution of the United States. For the reasons stated herein, we conclude that he was not denied the right to confrontation.

In *Coy v. Iowa,* 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), the Supreme Court examined the constitutional validity of a state statutory procedure which per-

---

**3.** Between the time of trial and the issuance of the Court of Military Review decision in this case, the United States Supreme Court decided *Coy v. Iowa,* 487 U.S. 1012, 1020–22, 108 S.Ct. 2798, 2803, 101 L.Ed.2d 857 (1988). *Maryland v. Craig,* 497 U.S. ——, 110 S.Ct. 3157, 111

L.Ed.2d 666 (1990), a recent case construing *Coy,* had yet to be decided. Nevertheless, the Court of Military Review correctly forecast the direct, ultimate rule of law dealing with child-witnesses and confrontation.

mitted child-sexual-abuse victims to testify at trial from behind a screen blocking the defendant from their sight, but allowing him "dimly to perceive" them and to hear their testimony. *Id.* at 1015, 108 S.Ct. at 2799. Writing for the majority, Justice Scalia stated that "the irreducible literal meaning of the [Confrontation] Clause [is the] 'right to *meet face to face* all those who appear and give evidence *at trial.*'" *Id.* at 1021, 108 S.Ct. at 2803, *quoting California v. Green,* 399 U.S. 149, 175, 90 S.Ct. 1930, 1943, 26 L.Ed.2d 489 (1970) (Harlan, J., concurring). Because Coy was not allowed to see his accusers "face to face" at trial, such a procedure violated his Sixth Amendment right to confrontation. The majority also stated:

> We leave for another day, however, the question whether any exceptions exist [to this meaning of the Confrontation Clause]. Whatever they may be, they would surely be allowed only when necessary to further an important public policy.... Since there have been no individualized findings that these particular witnesses needed special protection, the judgment here could not be sustained by any conceivable exception.

*Id.,* 487 U.S. at 1021, 108 S.Ct. at 2803.

Justice O'Connor, with whom Justice White joined, concurred in a separate opinion, stating:

> There is nothing novel about the proposition that the Clause embodies a general requirement that a witness face the defendant.... But it is also not novel to recognize that a defendant's *"right physically to face those who testify against him,"* ... *is not absolute* and ... [we] reject any suggestion to the contrary in the Court's opinion.... In short, our precedents recognize a right to face-to-face confrontation at trial, but have never viewed that right as absolute....
>
> Thus, I would permit use of a particular trial procedure that called for something other than face-to-face confrontation if that procedure was necessary to further an important public policy....

4. For the contrary view, *see Maryland v. Craig,*

The protection of child witnesses is, in my view and in the view of a substantial majority of the States, just such a policy.... But if a court makes a case-specific finding of necessity, as is required by a number of state statutes, ... our cases suggest that the strictures of the Confrontation Clause may give way to the compelling state interest of protecting child witnesses. Because nothing in the Court's opinion conflicts with this approach and this conclusion, I join it. 487 U.S. at 1024–25, 108 S.Ct. at 2804–05 (citations omitted; emphasis added).

Subsequently, by its decision in *Maryland v. Craig,* 497 U.S. ——, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), the Supreme Court has made it abundantly clear that the right to confrontation does not guarantee criminal defendants the *absolute* right to face-to-face meetings with the witnesses against them at trial. There the Court stated:

> In sum, our precedents establish that "the Confrontation Clause reflects a *preference* for face-to-face confrontation at trial," a preference that "must occasionally give way to considerations of public policy and the necessities of the case."

*Id.* at 3165, *citing Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980) (emphasis added); and *Mattox v. United States,* 156 U.S. 237, 243, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895).[4]

> Moreover, confrontation includes not only a "personal examination," ... but also "(1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; [and] (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility."

*supra* at 3171–76 (Scalia, J., dissenting).

[*California v.*] *Green*, 399 U.S. at 158 [90 S.Ct. at 1935] (footnote omitted)

*Maryland v. Craig, supra*, 110 S.Ct. at 3163.

At issue in *Craig* was the constitutionality of a Maryland statutory procedure permitting a child witness in a sexual abuse case to testify via one-way closed circuit television, where the child would be questioned by the prosecutor and defense counsel in a room separate from the courtroom. The judge, jury, and defendant remained in the courtroom where the testimony was displayed.

The Court answered the question regarding the possibility of exceptions which it had reserved in *Coy* as follows:

[A] State's interest in the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court.

*Maryland v. Craig, supra* at 3167. The Court noted that "to the extent the child witness' testimony may be said to be technically given out-of-court (though we do not so hold), these assurances of reliability and adversariness are far greater than those required for admission of hearsay testimony under the Confrontation Clause." *Id.* at 3167. *See also Ohio v. Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539. The Court also held, however, that whenever the prosecution proposes a procedure which deviates from face-to-face confrontation in order to protect the welfare of the particular child-witness who seeks to testify, there must "be a case-specific" "finding of necessity" by the trial court in order to allow the procedure. *Id.*, 110 S.Ct. at 3169.[5]

Measured against these standards for child-sexual-abuse victims testifying at trial, we are convinced, in this particular case, that allowing the two boys to testify with their backs to appellant did not violate his rights under the Sixth Amendment.

The procedure used in the case now before us provided these same "*safeguards of "reliability and adversariness" Maryland v. Craig, supra* at 3166 (emphasis added). *See also Ohio v. Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539. First, the record shows that the children understood the solemnity of the oath to testify truthfully. Second, appellant had every opportunity to rigorously cross-examine them as to their testimony. Wigmore has stated:

(1) The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.* The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers.

5 Wigmore, Evidence § 1395 at 150 (Chadbourne rev.1974); *see also Coy v. Iowa*, 487 U.S. at 1029, 108 S.Ct. at 2807 (Blackmun, J., dissenting) ("There never was at common law any recognized right to an indispensable thing called confrontation *as distinguished from cross-examination.*"), *quoting* 5 Wigmore, *supra* § 1397 at 158.

Third, the military judge, as factfinder in a small courtroom, was able to observe the boys' demeanor and assess their credibility. We are, therefore, convinced that the procedure used in this case to protect the

---

**5.** The Supreme Court vacated and remanded the decision from the Maryland Court of Appeals, because it appeared that the state court required that the child witness first be questioned in the presence of the defendant to determine if the child-witness would suffer such emotional distress that reasonable communication would not be possible. The Supreme Court

declined[d] to establish, as a matter of federal constitutional law, any such categorical evidentiary prerequisites for the use of the one-

way ... procedure. The trial court in this case, for example, could well have found, on the basis of the expert testimony before it, that testimony by the child witnesses in the courtroom in the defendant's presence "will result in [each] child suffering serious emotional distress such that the child cannot reasonably communicate," ...

*Maryland v. Craig, supra*, at 3171 (citations omitted).

child-witnesses did "not impinge upon the truth-seeking or symbolic purposes of the Confrontation Clause." *Maryland v. Craig*, 110 S.Ct. *supra* at 3167.

Fourth, and most importantly, both the military judge and the Court of Military Review specifically found that the procedure utilized to protect the children was *necessary. Maryland v. Craig, supra*, at 3165. After careful review of the psychologist's testimony, the military judge's rulings, and arguments of counsel, we likewise are convinced that the procedure used here (seating each child-witness with his back towards appellant while testifying at trial) by the military judge did not violate appellant's right of confrontation.[6]

The decision of the United States Air Force Court of Military Review is affirmed.

EVERETT, Chief Judge (concurring):

In *Coy v. Iowa*, 487 U.S. 1012, 1016, 108 S.Ct. 2798, 101 L.Ed.2d 857, 864 (1988), Justice Scalia, writing for the Court, stated:

We have never doubted, therefore, that the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact.

Accepting that proposition—which seems to conform to the language of the Sixth Amendment—I would see no choice but to agree with the dissent of Senior Judge Lewis in the court below (29 MJ 541, 546–48) and to vote for reversal of appellant's

conviction. Clearly, Thompson was not allowed a "face-to-face meeting" with the two children who testified against him.

However, in *Maryland v. Craig*, 497 U.S. ——, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), the Supreme Court, over a strong dissent by Justice Scalia and three other Justices, has provided new guidance. As I read *Craig*, a defendant's right to confront a witness face-to-face must yield under some circumstances to the State's interest in the welfare of a child-accuser. However, this curtailment of the defendant's right seems to have been authorized only if literal confrontation will cause such emotional trauma that the child cannot reasonably communicate information to the trier of fact. Moreover, the judge may not allow any alternative to face-to-face confrontation unless he has made a specific inquiry and entered appropriate, case-specific findings based on the evidence before him.[1]

When I match appellant's case with *Craig*, I conclude that here the testimony of the two child-witnesses was properly received. Admittedly, a Maryland statute—which parallels laws enacted in many other states—specifically authorized use of closed circuit television when "testimony by the child victim in the courtroom will result in the child suffering serious emotional distress such that the child cannot reasonably communicate." [2] On the other hand, neither the Uniform Code of Military Justice nor the Manual for Courts–Martial contains any similar grant of authority.[3] However, I conclude that, even in the ab-

---

**6.** Although not raised on appeal, there is also the question of whether such a procedure violates an accused's right to due process, in that it creates undue prejudice when the trier of fact sees the witness testify with his back to the accused, possibly inferring guilt. Because the case was tried before a military judge alone, we are confident that the judge drew no such inference of guilt from seeing the children testify with their backs to appellant. *See* finding one, 31 MJ at 170. We leave the question for another day whether such a procedure would be prejudicial if used in front of members. Although the same issue was raised in *Coy v. Iowa, supra*, the Supreme Court found it unnecessary to reach the due process claim because the denial of face-to-face confrontation was held to constitute reversible error.

**1.** However, in *Craig*, the Supreme Court refused to require that the trial court "observe the children's behavior in the defendant's presence." 110 S.Ct. 3157, 3171.

**2.** Section 9–102 of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland (1989), *quoted in Craig*, 110 S.Ct. at 3161 n. 1.

**3.** Several years ago I proposed that the Joint–Service Committee on Military Justice consider the desirability of a Manual provision dealing with this general subject; and I still believe this might be worth pursuing.

sence of a statutory provision or a rule of court, a military judge has inherent authority to dispense with face-to-face confrontation of a child-witness who otherwise will suffer emotional distress that will prevent the child from testifying meaningfully.

In *Craig*, the Supreme Court made clear that the trial judge must inquire carefully to determine whether there is a pressing need to shield a child-witness from a "face-to-face meeting" with the defendant. Here, the military judge heard testimony from an expert, who had been treating the two children over a long period of time; and thereafter he entered relevant findings. Although I would have preferred that the findings be more specifically addressed to the questions with which the majority in *Craig* was concerned, I believe the findings in this case were adequate to justify curtailment of Thompson's right to a "face-to-face meeting" with the two children.[4]

The Government did not seek to utilize closed circuit television, as was done in *Craig*. In one respect, this benefited appellant, because the children were in the same courtroom with him and they could be observed directly by the factfinder as they testified. On the other hand, the placement of the children when they testified may have tended to suggest that appellant was guilty and that the children were justifiably fearful of him. The trial was by a judge alone; and the judge specifically found that the special seating arrangement during the testimony of the two children would not affect the presumption of innocence to which Thompson was entitled. Under these circumstances, I believe appellant was adequately protected.[5]

SULLIVAN, Judge (concurring in the result):

The military judge was presented with an adequate basis for his ruling and entered *case-specific* findings to support the procedure used here. *See Maryland v. Craig*, 497 U.S. ——, ——, 110 S.Ct. 3157, 3169, 111 L.Ed.2d 666, 685 (1990). Nonetheless, I would note that the children's testimony was cumulative in light of the psychologist's unchallenged hearsay repetitions of their descriptions of sexual abuse inflicted on them by appellant. Accordingly, were I to assume, *arguendo*, that the procedure used in this case did not meet the strict requirements of *Maryland v. Craig, supra*, I would nevertheless conclude that harmless error had occurred here. *See Coy v. Iowa*, 487 U.S. 1012, 1021–22, 108 S.Ct. 2798, 2803, 101 L.Ed.2d 857 (1988).

---

4. Of course, at the time of the trial, the military judge did not have the benefit of the *Craig* opinion.

5. In a trial by court members, it will be especially important for a military judge to consider the risk that the members may infer guilt because of the location of a child-witness during his testimony. The judge should be careful to preclude such an inference by giving appropriate instructions.