**UNITED STATES, Appellee,**

v.

**Sergeant Victor PALACIOS,
460–31–0201, United States
Army, Appellant.**

**ACMR 8902789.**

U.S. Army Court of Military Review.

13 June 1991.

For Appellant: Terence A. Lober (argued), Captain W. Renn Gade, JAGC (on brief).

For Appellee: Major Maria C. Fernandez, JAGC (argued), Major John L. Ross, JAGC (USAR), Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Colonel Alfred F. Arquilla, JAGC (on brief).

Before JOHNSON, WERNER and GRAVELLE, Appellate Military Judges.

## OPINION OF THE COURT

GRAVELLE, Judge:

Contrary to his pleas, Sergeant Palacios was found guilty by a general court-martial consisting of officer members of sodomy with a child under sixteen and committing indecent acts, in violation of Articles 125 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 925 and 934 (1982). The convening authority approved the adjudged sentence consisting of a dishonorable discharge, confinement for twelve years, forfeiture of all pay and allowances and reduction to Private E1.

Sergeant Palacios raises four issues.[1] All relate to the correctness of the military judge's ruling regarding the admissibility, under the Sixth Amendment and Military Rule of Evidence 804(b)(5), of a videotaped out-of-court statement of the child sexual abuse victim. U.S. Const. amend. VI; Manual for Courts–Martial, United States, 1984 [hereinafter MCM, 1984], Military Rule of Evidence 804(b)(5) [hereinafter Mil. R.Evid.]. We find that the admission of the videotaped statement into evidence was error. We will discuss only the first issue.

### I. Facts

Sergeant Palacios was charged with having committed indecent acts and sodomy with his six-year-old stepdaughter on divers occasions between August 1988 and April 1989. His conduct came to light when his wife saw him leaving her daughter's bedroom with his fly open and with an apparent erection. Mrs. Palacios became very upset, yelled at her husband and demanded to know what had happened. Sergeant Palacios refused to answer. Mrs. Palacios immediately questioned her daughter, who was crying. The girl said that her stepfather had entered her room, pulled down her underwear, pulled down his underwear, and fondled her. Mrs. Palacios immediately called the military police. Military Police Investigator (MPI) Gruber arrived at the Palacios' quarters ten to fifteen minutes later. He questioned the girl, who was still upset, and she repeated her allegations and described a similar incident that occurred a year before.

A day later, MPI Graves, another investigator, interviewed the girl in his office. During the interview, the girl explained

---

1. WHETHER THE MILITARY JUDGE ERRED BY ADMITTING INTO EVIDENCE THE OUT–OF–COURT STATEMENTS OF THE ALLEGED VICTIM IN VIOLATION OF THE CONFRONTATION CLAUSE OF THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AS RESIDUAL HEARSAY UNDER MIL.R.EVID. 804(b)(5).
WHETHER THE MILITARY JUDGE ERRED IN FINDING THAT THE ALLEGED VICTIM WAS UNAVAILABLE WITHIN THE MEANING OF MIL.R.EVID. 804.
WHETHER THE MILITARY JUDGE ERRED IN FINDING THAT THE WAY THE VIDEO

INTERVIEW WAS CONDUCTED ACTUALLY ENHANCED THE TRUTHFULNESS OF THE DECLARANT (ALLEGED VICTIM) MORE THAN A SIMPLE OATH WOULD.
WHETHER THE MILITARY JUDGE ERRED IN FINDING THAT THE VIDEO INTERVIEW WOULD SERVE ONE OF THE PURPOSES OF THE CONFRONTATION CLAUSE OF THE SIXTH AMENDMENT BY ALLOWING THE MEMBERS OF THE COURT TO OBSERVE THE ALLEGED VICTIM MAKING THE STATEMENTS AND TO JUDGE CREDIBILITY.

how the appellant had molested her. She also related additional incidents of sexual abuse, including one instance of rape.[2] The girl's mother was present at the interview.

About a month later, prior to the commencement of the Article 32, UCMJ, investigation, MPI Graves again questioned the girl. The interview was videotaped and is approximately one-and-one-half hours in length. The child's mother and grandmother were present initially, but left the room when MPI Graves began to question the girl. The trial counsel was present at this session. During the interview, the child revealed for the first time that, in addition to fondling her, her stepfather had sodomized her. The girl also provided more details as to the number and nature of the indecent touchings. Contrary to the previous statement to MPI Graves, she denied that a rape had occurred. At trial, MPI Graves, in response to questions by the trial counsel, explained the motivation behind videotaping his lengthy interview of the child:

Q. Why did you do the second interview on videotape?

A. Well, it was a product of you and me [and] it was very hard for me to talk to her and I knew it would be very hard for her to talk in a courtroom. We thought it would be useful in the [Article] 32 hearing and her mom was talking about leaving before trial so we wanted to put it on tape. It was hard for me to get her [to] say it and I didn't think that she would be able to do it in court.

Q. Did you ask her on the tape if she would be willing to testify in court?

A. Yes, I did. I asked her—I brought her into this room [the courtroom] during our break before we brought in the tape—I brought her in this room and I asked her if this room was full of people would you tell me what you told me in there and she said no and I asked her that again and she said no.

Soon after the videotaped interview, Mrs. Palacios took the child to the United States. The record contains no indication that the child's removal from Germany was done with the help or at the instigation of the government.

■ At trial, the defense counsel moved, *in limine*, to exclude the videotaped interview on evidentiary and constitutional grounds. The mother returned to Germany and testified on the motion. She testified that her daughter was currently residing in North Carolina and that she would not permit the child to return to Germany or to testify. The military judge ruled that the child victim was unavailable[3] and admitted the videotaped statement as residual hearsay under Mil.R.Evid. 804(b)(5).

## II. Analysis

### A. The Confrontation Clause and Hearsay Exceptions

The relationship between the Confrontation Clause and the hearsay rule with its many exceptions has been a subject much pondered by the Supreme Court. *See e.g. California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) and *Idaho v. Wright*, —— U.S. ——, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).

■ The Confrontation Clause's purpose was to combat the vice of convicting defendants solely on the basis "of *ex parte* affidavits or depositions, thus denying the defendant the right to challenge his accuser in a face-to-face encounter in front of the trier of fact." *California v. Green*, 399 U.S. at 156, 90 S.Ct. at 1934. "The

---

2. The military judge ruled that this statement was not admissible, so the statement is not an issue in this case.

3. We agree with the military judge that the child victim was unavailable. Mil.R.Evid. 804(a)(5); *United States v. Crockett*, 21 M.J. 423 (C.M.A.), *cert. denied*, 479 U.S. 835, 107 S.Ct. 130, 93

L.Ed.2d 74 (1986). Unlike the situation in *United States v. Ferdinand*, 29 M.J. 164 (C.M.A.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990), there was no subpoena power available to the military judge in this case. *United States v. Bennett*, 12 M.J. 463 (C.M.A. 1982).

central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to an adversary proceeding before the trier of fact." *Maryland v. Craig,* —— U.S. ——, 110 S.Ct. 3157, 3163, 111 L.Ed.2d 666 (1990).[4] The right guaranteed by the Confrontation Clause consists of four elements: (1) "a personal examination" of the witness; (2) an oath requirement; (3) cross-examination; and (4) observation of the witness' demeanor by the trier of fact. *Craig,* 110 S.Ct. at 3163, *citing California v. Green,* 399 U.S. at 158, 90 S.Ct. at 1935; *United States v. Thompson,* 31 M.J. 168, 171 (C.M.A.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 956, 112 L.Ed.2d 1044 (1991). *See Craig,* 110 S.Ct. at 3163, *citing Kentucky v. Stincer,* 482 U.S. 730, 739, 107 S.Ct. 2658, 2664, 96 L.Ed.2d 631 (1987). "The Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa,* 487 U.S. 1012, 1016, 108 S.Ct. 2798, 2800, 101 L.Ed.2d 857 (1988) *citing Kentucky v. Stincer,* 482 U.S. at 748–750, 107 S.Ct. at 2669–2670 (Marshall, J., dissenting). "Face-to-face confrontation enhances the accuracy of factfinding by reducing the risk that a witness will wrongfully implicate an innocent person." *Craig,* 110 S.Ct. at 3164, *citing Coy v. Iowa,* 487 U.S. at 1019–1020, 108 S.Ct. at 2802. However, the face-to-face meeting is not an absolute requirement and "the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to explore [testimonial] infirmities ... through cross-examination...." *Craig,* 110 S.Ct. at 3164, *citing Ohio v. Roberts,* 448 U.S. at 69, 100 S.Ct. at 2540. Further, "the Confrontation Clause permits, where necessary, the admission of certain hearsay statements against a defendant despite the

defendant's inability to confront and cross-examine the declarant at trial." *Id.*

The hearsay rule is "a restriction on the proof of fact through extracurricular statements." *Dutton v. Evans,* 400 U.S. at 88, 91 S.Ct. at 219. The purpose of the hearsay rule is to exclude unreliable evidence that cannot be tested in court. The Supreme Court has recently said:

> The theory of the hearsay rule ... is that the many possible sources of inaccuracy and untrustworthiness which may lie underneath the bare untested assertion of a witness can best be brought to light and exposed, if they exist, by the test of cross-examination. But this test or security in a given instance may be superfluous; it may be sufficiently clear, in that instance, that the statement offered is free enough from the risk of inaccuracy and untrustworthiness, so that the test of cross-examination would be a work of supererogation.

*Wright,* 110 S.Ct. at 3149, *quoting* 5 J. Wigmore, EVIDENCE § 1420, p. 251 (J. Chadbourne rev. 1974).

> In other words, if the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility, then the hearsay rule does not bar admission of the statement at trial.

*Wright,* 110 S.Ct. at 3149.

 The hearsay rule is riddled with exceptions. These exceptions have grown up through three hundred years of judicial and legislative experience in which certain extrajudicial statements were tested and found to be reliable because of special circumstances surrounding the statements which guaranteed their reliability. As a consequence, these judicially-tested "firmly rooted hearsay exceptions" usually satisfy the constitutional requirement of reliabili-

---

**4.** Unlike the case before us, *Maryland v. Craig,* construing *Coy v. Iowa,* 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), involved the necessity of face-to-face confrontation with a witness at trial. *Idaho v. Wright,* on the other hand, involved out-of-court hearsay statements and applied the two-part test of *Ohio v. Roberts,* discussed *infra. See Washington v. Sosa,* 59

Wash.App. 678, 800 P.2d 839, 841 n. 1 (Ct.App. 1990). *Maryland v. Craig* teaches that *even when the witness testifies in court and is subject to cross-examination,* deprivation of the right to a face-to-face confrontation is still an issue. *See also United States v. Romey,* 32 M.J. 180 (C.M.A. 1991) and *United States v. Batten,* 31 M.J. 205 (C.M.A.1990).

ty[5] and are admissible into evidence despite the absence of the declarant. *See id.,* 110 S.Ct. at 3149; *Mattox v. United States,* 156 U.S. 237, 243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895).

■ In *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Supreme Court set forth a general approach for determining when incriminating statements admissible under an exception to the hearsay rule also meet the requirements of the Confrontation Clause. Once a witness has been shown to be unavailable, that witness' statement is admissible under the Sixth Amendment only if the statement of the unavailable witness bears adequate "indicia of reliability." *Id.* Reliability may be inferred if the statement falls within a "firmly rooted hearsay exception." When (as in the case before us) a statement does not fall within a firmly rooted hearsay exception, it must bear "particularized guarantees of trustworthiness." *Ohio v. Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539. *Idaho v. Wright* recently placed a new limitation on these indicia of reliability:

> We think that the "particularized guarantees of trustworthiness" required for admission under the Confrontation Clause must likewise be drawn from the totality of circumstances that surround the making of the statement and that render the declarant worthy of belief.

110 S.Ct. at 3153.

### B. Residual Hearsay

From time to time, new exceptions to the hearsay rule have been created by judicial or legislative action. One such newly-created exception is found in Federal Rules of Evidence 803(24) and 804(b)(5) and in their military counterparts, Mil.R.Evid. 803(24) and 804(b)(5). These rules recognize a new exception to the hearsay rule styled "residual hearsay." This residual hearsay exception "accommodates *ad hoc* instances in which statements not otherwise falling within a recognized hearsay exception might nevertheless be sufficiently reliable to be admissible at trial." *Idaho v. Wright,* 110 S.Ct. at 3147–48, *citing* Senate Judiciary Committee's Note on Fed.R.Evid. 803(24), 28 U.S.C. App., pp. 786–787; E. Cleary, McCormick on Evidence, § 324.1, pp. 907–909 (3rd ed. 1984). Devoid of a lengthy period of judicial experience and testing to establish reliability, this evidence is presumptively unreliable and therefore presumptively inadmissible at trial. Under Mil.R.Evid. 804(b)(5), this presumption against admissibility may be overcome only if certain findings regarding reliability are made by the military judge. The military judge must find that the hearsay statement possesses "equivalent circumstantial guarantees of trustworthiness."[6] The term "equivalent circumstantial guarantees of trustworthiness" under Mil.R.Evid. 804(b)(5) has been held to be equivalent to the Sixth Amendment requirement that evidence be taken under circumstances bearing "indicia of reliability." *United States v. Dunlap,* 25 M.J. 89, 91 (C.M.A.1987) *citing Hines,* 23 M.J. at 134. The Court of Military Appeals has stated, "Since, to be admissible, residual hearsay statements have to pass both constitutional and evidentiary muster, we see no harm in 'constitutionalizing' this aspect of Mil.R.Evid. 804(b)(5)." *Hines,* at 134.[7]

---

**5.** Although the right of confrontation and the hearsay rule stem from the same roots, they are not coextensive, and evidence admissible under a hearsay exception may still be inadmissible under the Confrontation Clause. *Dutton v. Evans,* 400 U.S. at 86, 91 S.Ct. at 218; *United States v. Hines,* 23 M.J. 125, 127 (C.M.A.1986), citing E. Cleary, McCormick on Evidence, § 249 *et seq.* (3d ed. 1984); *United States v. Quick,* 22 M.J. 722, 724 (A.C.M.R.1986), *aff'd* 26 M.J. 460 (C.M.A.1988). This distinction was recently reaffirmed in *Idaho v. Wright,* 110 S.Ct. at 3146.

**6.** Under Mil.R.Evid. 804(b)(5), the military judge must also determine that the witness is

unavailable and: (A) the statement is offered as evidence of a material fact; (B) the statement is more probative of the point for which it is offered than any other evidence which the proponent can produce through reasonable efforts; and, (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. Mil. R.Evid. 804(b)(5).

**7.** Subsequent to *Hines* and *Dunlap,* the Supreme Court decided *Idaho v. Wright,* imposing a new limitation on what facts could be considered as particularized guarantees of trustworthiness. The new limitation is discussed *infra.* Under

The similar purposes of the evidentiary and constitutional standards in producing reliable evidence is critical in deciding the case before us. Reliability of evidence is the common thread running through all of the cases cited above. In the final analysis, we must be satisfied that the videotaped statement is reliable evidence.

The military judge's findings of fact regarding the reliability of the statement included the following equivalent circumstantial guarantees of trustworthiness: The child's statement was corroborated by the mother's observations; the statement was consistent with previous statements; though the statement was not made under oath, the manner of questioning impressed on the child the need for truthfulness and was functionally equivalent to an oath; the videotape permitted the finders of fact to observe the child and determine her credibility; the interviewer's questions were nonleading; the interviewer closely questioned the child about inconsistencies in her statement; there was no motivation to lie; and, at no time did the child recant her statement.[8]

■ We acknowledge that a number of the factors enumerated by the military judge tend to establish the reliability of the videotaped statement. However, we are more impressed by other, countervailing

evidence that the statement was unreliable. The child witness was not present at the Article 32, UCMJ, investigation or at the trial. The appellant was not present, either in person or through a representative, at the videotaped interview. The trial counsel and MPI Graves decided to videotape the interview when they became aware of the child's probable unavailability for the Article 32, UCMJ, investigation and for trial. Only the trial counsel was present when MPI Graves conducted the interview. So far as we can tell, there was no opportunity for the appellant or his representatives to question—much less cross-examine—the child prior to trial. The fact that the child was in the custody of her mother during the entire month prior to the videotaping and that the mother was antagonistic to the appellant suggests the possibility that the child's statements may have been influenced by her mother. We therefore cannot be certain of the reliability of the evidence of sodomy and those indecent acts that came to light in the videotaped interview. Finally, the child was not under oath.[9]

We are simply not convinced that an *ex parte* videotaped interview by a law enforcement officer possessed sufficient guarantees of trustworthiness to make the statement so reliable as to preclude the necessity of cross-examination.[10] The mili-

the wording of *Hines,* this limitation could similarly be applied to Mil.R.Evid. 804(b)(5). We need not decide this issue in the present case, as it does not affect the outcome.

**8.** Sergeant Palacios' court-martial occurred prior to the Supreme Court's opinion in *Idaho v. Wright,* 110 S.Ct. 3139; however, the rule of that case applies to his court-martial. *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (new constitutional rules apply retroactively to all cases, state and federal, which are pending on direct review even if the rule is a "clear break" with the past). *See also United States v. Moreno,* 31 M.J. 935 (A.C.M.R.1990). Under *Idaho v. Wright,* the first two of the military judge's findings are excluded from consideration.

**9.** We we do not consider this single fact to be determinative, and we need not decide in this case whether the questioning was the functional equivalent of an oath. *See e.g., Thomas v. Guenther,* 754 F.Supp. 833, 835 (D.C.Colo.1991) (in the case of a child witness of tender years, questioning the witness regarding her under-

standing of the truthfulness and the wrongfulness of lying may in some cases be the functional equivalent of an oath).

**10.** We agree with Judge Cox's comments in *United States v. Hines,* 23 M.J. at 137, regarding *ex parte* statements to law enforcement officers. *See also United States v. Barror,* 23 M.J. 370, 372 (C.M.A.1987) and *United States v. Ferdinand,* 29 M.J. at 168 n. 6 (C.M.A.1989) (*ex parte* statements to a law enforcement official with no opportunity of cross-examination place the statements within the realm of "the investigative process" rather than in the "judicial process"). We do not mean to imply that the videotaping was done with any evil intent or that the questioning of the child by MPI Graves in the presence of the trial counsel was purposely biased. Indeed, the interview demonstrates excellent technique in questioning a young child. Nor do we hold that videotaped interviews of children are *never* admissible. *See Idaho v. Wright,* 110 S.Ct. at 3144. *See also United States v. Moreno,* 31 M.J. 935, 940 (A.C.M.R.1990) (videotape statement admissible when the defendant had

tary judge, in his findings of fact, acknowledged as much when he stated:

> Cross-examination would serve a purpose I believe if [the child] was present because there are some obvious areas that the defense would want to cross-examine about.... Certainly, there are some things that need to be explored that could be explored if she were testifying in court and I am cognizant that my ruling will deny the defense the opportunity to cross-examine on those issues.

We hold that the circumstances surrounding the making of the videotaped statement do not meet the high standards of reliability demanded by the Sixth Amendment and by Mil.R.Evid. 804(b)(5). We therefore find that the military judge erred in admitting the statement into evidence, and that the error was prejudicial to Sergeant Palacios' rights.

▪ Even when the videotaped statement is excluded, there is other evidence which was admitted at trial to prove Sergeant Palacios' sexual abuse. The military judge admitted the child's statements to the mother and to MPI Gruber, made immediately after the incident at Sergeant Palacios' quarters, as excited utterances under Military Rule of Evidence 803(2). We agree with the military judge's determination that these statements qualify as excited utterances. *United States v. Arnold,* 25 M.J. 129 (C.M.A.1987), *cert. denied,* 484 U.S. 1060, 108 S.Ct. 1015, 98 L.Ed.2d 980 (1988).

▪ The only evidence supporting the sodomy charge and certain of the indecent acts alleged "on divers occasions" in Charge II is contained in the videotaped statement. We are mindful of the "spillover effect" that the sodomy charge and the additional indecent acts may have had on the court members. *See United States v. Haye,* 29 M.J. 213 (C.M.A.1989); *United States v. Hogan,* 20 M.J. 71 (C.M.A.1985); *United States v. Taylor,* 32 M.J. 684 (A.F. C.M.R.1991). Nevertheless, because of the corroborating evidence provided by the mother's and MPI Gruber's testimony regarding the incident in the girl's bedroom, we find that the error is harmless beyond a reasonable doubt as to that one indecent act. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Remai,* 19 M.J. 229 (C.M.A.1985). We will, therefore, affirm that finding of guilty, and return this case for reassessment of sentence. *United States v. Sales,* 22 M.J. 305 (C.M.A.1986).

The error personally asserted by the appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), is without merit.

The findings of guilty of the Additional Charge and its Specification are set aside and the Additional Charge and its Specification are dismissed. The Court affirms only so much of the findings of guilty of Charge II and its Specification as finds that the appellant did, on or about 21 April 1989, at Bad Kreuznach, Federal Republic of Germany, commit an indecent act upon the body of C.M.S., a female under 16 years of age, not the wife of the appellant, by touching her vagina, with the intent to gratify his lust and sexual desires, in violation of Article 134, Uniform Code of Military Justice. The sentence is set aside. A rehearing on the sentence may be ordered by the same or a different convening authority. If the convening authority decides that a rehearing on the sentence is impracticable, he may approve a sentence of no punishment.

Senior Judge JOHNSON and Judge WERNER concur.

---

the ability to confront the victim in a deposition where defense counsel was present and had the opportunity to cross-examine the declarant but failed to do so).