STRICKLAND, Senior Judge:
The appellant was found guilty, in accordance with his plea, of violating a lawful order by failing to register his handgun aboard Kaneohe Bay Marine Corps Air Station in violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892. He was also found guilty, contrary to his plea, of committing indecent acts on a female (his natural daughter) under the age of 16 in violation of Article 134, UCMJ, 10 U.S.C. § 934. He was acquitted of communicating a threat to injure his daughter. The appellant was sentenced to a dishonorable discharge, confinement for 7 years, forfeiture of $289.00 pay per month for a period of 22 months, and a reduction to pay grade E-l. The convening authority approved the adjudged sentence.
The appellant assigns five errors on appeal.[1] We conclude that none of these assignments of error has merit. Although not assigned as error, we further conclude that the appellant’s plea to the orders violation is improvident.
I
The appellant, his wife, and two- young daughters lived in base housing aboard the Marine Corps Air Station. The oldest of the daughters, A, was just under four years of age at the time she was alleged to be the victim of the appellant’s indecent acts, and she was four and one-half years of age at the time of trial. The allegations of sexual abuse came about just prior to the appellant’s return from a deployment to Korea. When A’s *908 mother informed her that the appellant would be home soon, A reacted by saying that she did not want her father to come home and that she hated him. During further conversation the following day, A stated, “Daddy hurts my pee-pees.” When asked how, she replied, “with his finger.” A related the same information to the flight surgeon who initially treated her and to a clinical nurse specialist to whom she was also referred for treatment.
During the trial, the prosecution called as witnesses A’s mother, the flight surgeon, and the clinical nurse specialist to testify regarding the statements A made to them. A’s mother also testified concerning certain behavioral changes experienced by A after the allegations were revealed. Both the clinical nurse specialist and a clinical psychologist testified that A’s behavior was consistent with that of a child who had been sexually abused. In addition, a Naval Investigative Service agent testified that the appellant admitted making “inappropriate contact” with his daughter on one occasion.[2] The victim also testified by means of a closed circuit television connection from a room outside of the courtroom. The victim was essentially unresponsive during the entire testimony. Finally, on rebuttal, the prosecution elicited the testimony of the next-door neighbor who occasionally babysat A. The neighbor testified that when she was babysitting A in her home shortly after the allegations came to light, A made several spontaneous statements while in the bathroom, including, “This is where my daddy hurts me,” while pointing to her vaginal area.
The defense called several witnesses in an attempt to discredit the appellant’s wife. These witnesses testified that they would not believe the appellant’s wife under oath. There was also evidence that the appellant’s wife had affairs with at least two different men while the appellant was deployed. The defense theory of the case was that A’s mother was coaching her so that she could retain custody of the children or that any abuse was inflicted by one of the mother’s boyfriends.
II
The appellant asserts that the military judge erred in permitting the Government to present A’s testimony via closed-circuit television. In other words, he alleges that his Sixth Amendment right to confrontation was violated by the procedure used to examine this witness. The standard for review is whether the military judge abused his discretion in his finding of necessity to implement a procedure which deviated from face-to-face confrontation. See Maryland v. Craig, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).
The prosecutor proposed using a video link for the testimony of the victim. The defense objected and moved to oppose such a procedure. Evidence was taken on the motion, including that of a clinical nurse specialist who was accepted by the Court as an expert in the area of child sex abuse. It should also be noted that the military judge in a prior session of the Court attempted to question the victim in the courtroom in the presence of the appellant, and the victim was essentially unresponsive to the judge’s questions. The military judge denied the defense motion which, in essence, approved the procedure proposed by the prosecution. In doing so, he found, inter alia, that the nightmares A experienced after the alleged abuse was reported returned when A was told she had to go back to Hawaii for the trial; that testifying in open court could be psychologically damaging; that testifying could cause the event to be relived; that testifying in the presence of her father would result in A suffering serious emotional distress and render her unable to communicate; and, that it was thus necessary to avoid eye-to-eye confrontation in order to obtain A’s testimony.
Thereafter the military judge approved a plan where A testified from the library across the hall from the courtroom. All other participants remained in the courtroom. A camera, monitor, and microphone were placed in the library and in the courtroom such that everyone in-the courtroom saw and heard A, and A could see the appellant and both attorneys and could hear the questions asked by the attorneys.
*909 In Coy v. Iowa, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), the Supreme Court held that the Confrontation Clause required a face-to-face confrontation with witnesses giving evidence at trial. Thus,, a state procedure permitting a screen to be placed between a child sex abuse victim and the defendant, whereby the child could not see the defendant but the defendant could dimly see the victim, was held to be unconstitutional. The right to face-to-face confrontation, however, is not absolute. Craig. The “interest in the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh, at least in some cases, a defendant’s right to face his or her accusers in court.” Id., 497 U.S. at 852-53, 110 S.Ct. at 3167. Upon an adequate showing of necessity, on a case specific basis, a special procedure may be justified which deviates from face-to-face confrontation. Craig. Thus, the courts have upheld child witnesses testifying in the courtroom with the witness chair at an angle facing away from the accused, United States v. Williams, 37 M.J. 289 (C.M.A.1993), with their backs to the accused where there was evidence that the children would be traumatized if forced to testify facing the accused, United States v. Thompson, 31 M.J. 168 (C.M.A.1990), and have upheld a three year old victim testifying behind a screen with one-way closed circuit television allowing the accused to see the victim (but not the reverse) where there was also evidence of possible psychological trauma if the victim had to face the accused. United States v. Batten, 31 M.J. 205 (C.M.A.1990).
The specific findings of the trial judge in the instant case are analogous. The judge found that face-to-face testimony in open court could be psychologically damaging to A, and his findings were supported by the testimony of the expert on child sex abuse. The procedures adopted in this case were even less onerous than those in Williams, Thompson, and Batten. Here, a two -way video link was utilized and the victim actually saw the appellant during her testimony. Under all of the circumstances of this case, we hold that the military judge did not abuse his discretion in finding it necessary to institute the procedures for obtaining the testimony of A.
Even assuming, arguendo, that the procedure used in this case failed to meet the requirements of Craig, we would nevertheless conclude that the error was harmless and affirm the appellant’s conviction. Violations of the Confrontation Clause are subject to a harmless error analysis. Coy. The test “is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.” Batten at 211 (quoting Chapman v. California, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967)).
During A’s testimony over the two-way video link she responded only to preliminary questions concerning her sister and grandparents, identification of various animals on flash cards, and her trip to Hawaii on the airplane. Each and every time a question was asked regarding whether and how her father had hurt her, A was completely unresponsive. We fail to see how this “testimony” in any way contributed to the appellant’s conviction. On the other hand, the testimony concerning A’s statements to the treating doctor’s and the opinions of the doctors with respect to A’s behavior were overwhelmingly adverse to the appellant. Consequently, we are satisfied that any error in the procedure used to obtain A’s testimony in this case was harmless beyond a reasonable doubt.
Ill
The appellant alleges that the military judge erred in admitting statements by A to her babysitter, Melissa Anderson. The military judge admitted the statements on three separate theories, finding them admissible under Mil.R.Evid. 801(d)(1), 803(24), and 804(b)(5). The standard on review is whether the military judge abused his discretion in admitting this evidence. United States v. Powell, 22 M.J. 141 (C.M.A.1986); United States v. Ortiz, 34 M.J. 831 (A.F.C.M.R.1992).
Mrs. Anderson began babysitting A when the appellant deployed to Korea. She was babysitting A the day following the initial disclosure by A to her mother that she had been abused. Mrs. Anderson testified dur *910 ing the prosecution case in rebuttal,[3] and the following colloquy occurred:
Q. Did you have a conversation with her that day?
A. Yes.
Q. What, if anything, did she say?
A. She told me — well, she was in the bathroom and I was in the kitchen and she just out of the blue started talking. She said, “This is where my daddy hurts me with his finger.” And I said, “Don’t worry, I won’t let it happen again, we won’t let him do it to you again.” And she said, “But he will kill me with the gun on the T.V.”
Q. When she said to you that this is where he hurts me with his finger, did she indicate in any way what she was talking about?
A. She just pointed to her vaginal area. She didn’t really touch. She told me, ‘When Mommy is sleeping and I take my nap, he wakes me up and he hurts me.”
Record at 441, 442.
We reject the military judge’s reasoning that the statement was admissible pursuant to Mil.R.Evid. 801(d)(1)(B). To be admissible under this rule, the statement must be consistent with the declarant’s testimony at trial and offered to rebut a charge of improper influence. While the defense advanced a theory that A’s mother coached or influenced her, we conclude that A’s “testimony” at trial was nonexistent as to any issue relevant to the charged offenses. Thus, the first requirement under this rule cannot be met.
As to the military judge’s findings that the statement was admissible under the residual hearsay rule with the declarant either available or, in the alternative, unavailable, we reach a different conclusion. As we stated in United States v. Martindale, 36 M. J. 870, 876 (C.M.A.1993), “[t]he two residual hearsay exceptions (declarant unavailable/declarant available) are virtually identical.” The statement must be offered as evidence of a material fact, more probative of the point for which it is offered than any other evidence, and serve the interests of justice by its admission. It must also have equivalent circumstantial guarantees of trustworthiness. Mil.R.Evid. 803(24); Mil.R.Evid. 804(b)(5).
The military judge found that this statement was evidence of a material fact as to whether the appellant threatened A with a gun; was the only evidence concerning this charge; and, would assist the Court in arriving at the truth and thereby serve the interests of justice.[4] We agree with these special findings by the military judge. The remaining question is whether the statement had equivalent circumstantial guarantees of trustworthiness. We conclude that it did.
We need not determine whether the Confrontation Clause was satisfied by A’s presence in the courtroom, see United States v. Spotted War Bonnet, 933 F.2d 1471 (8th Cir.1991), cert. denied, — U.S. -, 112 S.Ct. 1187, 117 L.Ed.2d 429 (1992), because we conclude that the guarantees of trustworthiness were satisfied even if the demands of the Clause were not met. In such a situation, we may only consider the relevant circumstances surrounding the making of the statement that render the declarant worthy of belief without reference to any extrinsic or corroborating circumstances. Idaho v. Wright, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). The statement was spontaneously made by A without any prompting by the babysitter; the babysitter had not even mentioned that subject matter. The statement was made in the babysitter’s home, an environment that was familiar and comfortable to A. No third persons were present, and no one in authority was present. The words used by A and the context in which they were used was consistent with a child of A’s age and did not suggest that an *911 adult had “put words into her mouth.” Under these circumstances, we find the requisite guarantees of trustworthiness and conclude that the military judge did not abuse his discretion by admitting this statement into evidence. Even if we were to believe that the military judge had erred in admitting this statement, we would conclude that such error was harmless beyond a reasonable doubt in light of the other admissible statements by A, the appellant’s admission, and all of the other evidence in this case.
V
The appellant pleaded guilty to a violation of Article 92, UCMJ, by failing to register his privately owned handgun with the Provost Marshall’s office. One of the essential elements of this offense was that the appellant had knowledge of the lawful written order of the Commanding Officer, Marine Corps Air Station, Kaneohe Bay, Hawaii, requiring such registration. During the providence inquiry, the following colloquy occurred:
MJ: First, are you satisfied that there was in existence, during the period from Jun ’88 to March ’89, an Air Station Order P5500.6B?
ACC: Not the exact order, sir.
MJ: Have you ever seen a copy of this order?
ACC: No, sir, I have not.
MJ: Have your ever been informed of the contents of this order?
ACC: not exactly, sir — I stand corrected, sir. I knew it existed.
MJ: Well, the second element is that you had knowledge of the order, specifically the part that required you to register your weapon. Did you have knowledge of that order?
ACC: Yes, sir.
MJ: How did you have knowledge of the order?
ACC: Sir, I knew that — sir, I knew there was knowledge [sic] that I had to register my weapon. The exact order, I did not know at that time, sir.
MJ: Have you come, since, to learn of what the order is that requires you—
ACC: No, sir — yes, sir. I have since seen the order, sir.
MJ: Now, are you satisfied that the order was properly signed — properly issued, I should say.
ACC: Yes, sir.
MJ: In other words, are you satisfied that the Air Station Commanding Officer had the authority to issue that order?
ACC: Yes, sir, he did.
MJ: Are you satisfied that it was in effect from June ’88 to March ’89, during the period you’re alleged to have violated it?
ACC: Yes, sir.
MJ: Let’s go back to “you had knowledge of the order.”
How did you know about the order?
ACC: Upon purchasing the weapon, I was told by the Security Department, that I purchased the weapon from, that I would have to register it on base.
MJ: Where did you purchase the weapon?
ACC: The Security Department, located in Honolulu, sir.
MJ: What security department?
ACC: That’s the name of the business, sir.
MJ: Oh. As distinct from the security department — as distinguished from the security department of the Provost Marshal’s Office?
ACC: That’s correct, sir.
MJ: Okay. So you bought it from a private firm called Security Department, in Honolulu?
ACC: That’s correct, sir.
MJ: What was it they told you about registering the weapon?
ACC: They had told me, sir, that upon registering it with the Honolulu Police Department that I would be required to register it with the Base, the military police.
Record at 55-56.
Based on this colloquy, we conclude that the military judge only established that the appellant knew he had to register the gun. He failed to establish an adequate factual basis for the necessary element that the appellant had actual knowledge of the order in question. Accordingly, we hold that the ap *912 pellant pleas to Charge I and its single Specification are improvident. The findings of guilty of this charge and specification are set aside and Charge I and its Specification are dismissed. We will reassess the sentence.
VI
The remaining assignments of error are without merit. We are specifically convinced beyond a reasonable doubt of the appellant’ guilt of Specification 1 of Charge II and of Charge II. In addition, we conclude that the sentence, as reassessed herein, is appropriate for the offense of which the appellant was convicted.
VII
Accordingly, the findings, as modified herein, are affirmed. We have reassessed the sentence in accordance with United States v. Sales, 22 M.J. 305 (C.M.A.1986), and affirm only so much of the sentence as provides for a dishonorable discharge, confinement for 78 months, forfeiture of $289.00 pay per month for a period of 22 months, and reduction to pay grade E-l.
Chief Judge LARSON and Senior Judge ORR concur.

. I. THE GOVERNMENT FAILED TO PROVE APPELLANT GUILTY BEYOND A REASONABLE DOUBT OF SPECIFICATION 1 OF CHARGE II.
II. THE MILITARY JUDGE ERRED IN DENYING APPELLANT’S PRETRIAL MOTION TO SUPPRESS HIS STATEMENT TO NAVAL INVESTIGATIVE SERVICE AGENTS.
III. THE MILITARY JUDGE ERRED IN PERMITTING THE GOVERNMENT TO PRESENT A’S TESTIMONY VIA CLOSED-CIRCUIT TELEVISION.
IV. THE MILITARY JUDGE ERRED IN ADMITTING STATEMENTS BY A TO MELISSA ANDERSON.
V. A SENTENCE OF SEVEN YEARS CONFINEMENT IS INAPPROPRIATELY SEVERE FOR THESE OFFENSES UNDER THE CIRCUMSTANCES OF THIS CASE.

. The inappropriate touching admitted to by the appellant consisted of “tickling" A’s vaginal area.

. Ironically, she also testified for the defense during their case-in-chief and assailed the character of A's mother by stating she would not believe her under oath.

. The appellant was ultimately acquitted of this charge. Although the judge made no other findings, the statement was also relevant as to a material fact concerning whether the appellant committed indecent acts and would have served the interests of justice by its admission as to this charge. It may not, however, have been more probative on that issue than any other evidence in the case.